**In re L.S.**

[Cite as *In re L.S.*, 152 Ohio App.3d 500, 2003-Ohio-2045.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 81687.

Decided April 24, 2003.

Lander Lee Hennessey, pro se, for appellant-mother.

Martin Keenan and Buckeye Legal Center, for appellee-father.

James H. Schulz, Guardian Ad Litem.

---

TIMOTHY E. MCMONAGLE, Judge.

{¶ 1} Appellant-mother ("Mother") appeals from the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, designating appellee-father ("Father") as the residential parent and legal custodian of the parties' minor child, L.S., Jr. ("L.S."). For the reasons that follow, we affirm.

{¶ 2} The record reveals that Mother and Father never married but are the parents of L.S., who was born in November 1994. A parent-child relationship was established between Father and L.S. shortly after the child's birth. Mother was named residential parent and legal custodian of L.S. while Father was ordered to pay child support. Father appealed the calculation of child support, claiming that his income was improperly stated. This court affirmed. See *In re Beasley* (Sept. 4, 1997), Cuyahoga App. No. 71888, 1997 WL 547836.

{¶ 3} In May 1998, Mother reportedly obtained an order from the Probate Division of the Cuyahoga County Common Pleas Court changing the name of the parties' minor child from L.S., Jr., to L.H. upon Mother's application for change of name. Mother reportedly changed her name from Angela Beasley to Lander Hennessey as well. It appears from the record that Mother gave an incorrect address for Father when she filed the application and, as such, Father claims never to have received notice of Mother's application to change their son's name.[1]

{¶ 4} In January 1999, the trial court appointed attorney Pamela MacAdams as guardian ad litem for L.S.[2] Pending at the time of appointment were several motions relative to child support and visitation. The parties, up to this point, apparently agreed on some form of visitation schedule. Conflicts between them, however, are evident from the record. The trial court eventually entered an order for visitation. Around this time, in March 1999, Mother filed a notice of her intention to relocate to Las Vegas, Nevada. The motion stated that Mother was to be married and that she would agree to forgo past and present child

---

1. Throughout the transcript, the court and the parties referred to the minor child as "L.H." for the sake of consistency. In its decision rendered May 8, 2002, however, the trial court judge referred to the child as "L.S." For purposes of this opinion, we will refer to the minor child as "L.S." since there is no certified copy of the probate court's order contained in the record.

2. In May 2000, this guardian ad litem was granted permission to withdraw, and the trial court thereafter appointed attorney James H. Schulz to serve in this capacity.

support in exchange for a termination of Father's visitation rights. This motion was denied by the trial court in November 1999.

{¶ 5} Suffice it to say that neither parent has fully cooperated with the respective orders for child support or visitation, which have spawned an endless array of litigation. Father's efforts at paying child support have been sporadic while Mother has, more often than not, failed to make L.S. available for visitation with his father. In July 1999, Father filed a motion to be designated the residential parent and legal custodian of L.S. Thereafter, Mother filed several motions, including motions to remove the trial judge as well as the guardian ad litem. Allegations of physical abuse by Father were investigated by the Cuyahoga County Department of Child and Family Services ("CCDCFS") in April 2001 and found to be unsubstantiated. The intake social worker assigned to the case, Angela Curtis, did, however, find evidence to suggest that L.S. was emotionally abused by Mother. The parties were ordered to submit to psychological evaluations.

{¶ 6} Trial on the various motions before the court commenced on July 30, 2001, and ended on August 2, 2001. In its interim entry journalized August 3, 2001, the trial court found it in L.S.'s best interest to have Father designated as his residential parent and transferred custody to him. Thereafter, on May 8, 2002, the trial court issued a 25–page decision setting forth its findings of facts and conclusions of law. A journal entry to this effect was journalized on July 25, 2002.

{¶ 7} Mother is now before this court, pro se, and sets forth seven assignments of error for our review. We note at the outset that Mother's brief fails to separately argue her assignments of error as is required under App.R. 16(A)(7). Ordinarily, this court could, in its discretion, disregard such errors under App.R. 12(A)(2). To the extent that we are able to discern Mother's arguments, however, we will address her assignments of error.

## I

{¶ 8} Assignments of error one, three, and four pertain to the trial court's decision to designate Father as the residential parent and, therefore, will be discussed together. Succinctly, Mother argues that the trial court erred when (1) it failed to make a proper determination under R.C. 3109.04 sufficient to justify a modification in residential parent status, (2) there was insufficient evidence to support that Mother alienated L.S. from his father, and (3) it concluded that there was a change of circumstances under R.C. 3109.04.

{¶ 9} R.C. 3109.04 governs the allocation of parental rights and responsibilities of children and provides:

{¶ 10} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." R.C. 3109.04(E)(1).

{¶ 11} This statute further provides that "the court shall retain the residential parent designated by the prior decree * * * unless a modification is in the best interest of the child and * * * [t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶ 12} A trial court's decision modifying an allocation of parental rights and responsibilities is reviewed with the utmost deference. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 416–417, 674 N.E.2d 1159. A reviewing court, therefore, will not reverse a trial court's finding of a change of circumstances absent an abuse of discretion. Id. When applying an abuse-of-discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181. On the contrary, where there exists competent credible evidence to support an award of custody, there is no abuse of discretion. *Davis,* 77 Ohio St.3d at 418, 674 N.E.2d 1159. This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. *Davis,* 77 Ohio St.3d at 419, 674 N.E.2d 1159.

{¶ 13} Thus, as pertains to the facts of this case, the trial court was required to undergo a threefold analysis, namely, determining whether there was competent credible evidence to support that (1) a change in circumstances has occurred since the last decree, (2) the modification was necessary to serve the best interest of the child, and (3) the harm likely to be caused by the modification is outweighed by the advantages of modification. See, e.g., *Stover v. Plumley* (1996), 113 Ohio App.3d 839, 842, 682 N.E.2d 683.

### A. Change in Circumstances

{¶ 14} In determining what constitutes a change in circumstances, "the change must be one of substance, not a slight or inconsequential change." *Davis,*

77 Ohio St.3d at 418, 674 N.E.2d 1159. Relying on *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 3 OBR 479, 445 N.E.2d 1153, the *Davis* court stated:

{¶ 15} "The clear intent of [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment."

{¶ 16} In this case, the trial court found several changes that had occurred since the original decree. In particular, the court found that Mother's living arrangements appeared unstable as evidenced by numerous address changes. Mother testified that she spends a great deal of time at her mother's residence, which is actually a duplex shared by Mother's mother and brother. Moreover, there was testimony from Mother and her brother that L.S. spends a great deal of time at the brother's home, where he has his own room. This evidence led the trial court to conclude that Mother may not be L.S.'s primary caretaker.

{¶ 17} The trial court also found Mother's credibility lacking as pertains to her source of income, which she claims consists of Social Security survivor benefits she became entitled to upon the death of her father some twenty years ago. Mother's credibility was similarly found lacking regarding her past relationships. In particular, she testified to having been married to a Demetrius Monk only after confronted with a divorce decree and further testified that a less-than-well-known "family friend" by the name of Howard Landrum gifted her with a new 2001 Lexus valued at $36,000 (because she needed a car) as well as $40,000 worth of jewelry (because she did not have any).

{¶ 18} Further, the trial court found that Mother failed to cooperate with social workers investigating allegations of abuse and that she had L.S.'s name changed without Father being notified. Once an order of visitation was entered, Mother repeatedly failed to cooperate in making L.S. available for visitation with his father. Mother instructed L.S. to call his father "Mr. S." and to question Father about child support payments. Despite Mother's use of physical discipline, Mother instituted domestic violence proceedings in the domestic relations court in an effort to thwart Father's visitation rights when she learned that Father had similarly administered physical discipline.

{¶ 19} Consequently, the trial court's conclusion that these events constituted a change in circumstances was supported by competent, credible evi-

dence.[3]

## B. Best Interest of Child

{¶ 20}   After finding that a change of circumstances exists, the trial court next must consider whether the modification would serve the child's best interests. R.C. 3109.04(E)(1)(a).

{¶ 21}   R.C. 3109.04(F)(1) sets forth the factors that a trial court should consider when determining a child's best interests:

{¶ 22}   "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

{¶ 23}   "(a) The wishes of the child's parents regarding the child's care;

{¶ 24}   "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

{¶ 25}   "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

{¶ 26}   "(d) The child's adjustment to the child's home, school, and community;

{¶ 27}   "(e) The mental and physical health of all persons involved in the situation;

{¶ 28}   "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

{¶ 29}   "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

{¶ 30}   "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child;  whether either parent, in a case in which a

---

3.  On page 10 of the trial court's decision, the court states that Mother was convicted of aggravated robbery in 1995.  The record does not support this finding.  To the contrary, the record indicates that Mother has a criminal record for (1) forgery and uttering and (2) aggravated assault.  These offenses appear to have been committed before the birth of L.S., although the exact dates are unclear.  While this statement by the trial court is error, the error is harmless in that there existed other competent credible evidence to support a change in circumstances.

child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

{¶ 31} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

{¶ 32} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

{¶ 33} In its decision, the trial court thoroughly discussed each of the factors as they pertained to this case. It was undisputed that each parent wanted to be named residential parent. L.S. was not interviewed. The court noted that L.S. was six years old at the time of trial and accorded little weight to any statements attributed to him because the evidence indicated that Mother coached her son regarding his feelings for Father. From the testimony of the social workers and guardian ad litem, the trial court concluded that L.S. appeared to adjust and interact well with Father's family during visits with him, which is contrary to Mother's testimony regarding L.S.'s wishes. At one visitation exchange, for example, Mother appeared with L.S., and the child, upon seeing his father, asked him about paying child support. Evidently confused, L.S. began to cry and then hugged his father. As pertains to L.S.'s interaction with his parents' families, both parties' witnesses testified that L.S. gets along well with the respective families of each parent. Mother is unmarried and has no other children, whereas Father is married and has one other child and three stepchildren. L.S. spends a great deal of time at the home of Mother's brother, where he has his own room and interacts well with his cousins living there. L.S. similarly interacts well with the members of Father's family.

{¶ 34} The trial court found that L.S. completed kindergarten in the Euclid Schools. The court did note and the evidence supported that L.S.'s school records reflect that he has been marked for tardiness and has had several unexcused absences. Contrary to the court's decision that there was no evidence

of L.S.'s school performance, however, there was testimony that, despite some areas that need improvement, L.S. appears to be performing satisfactorily.

{¶ 35} Considering the mental and physical health of the parents, the trial court found Mother to be suffering from "emotional difficulties," which the court stated were apparent throughout the trial. Reiterating, Mother testified that she receives Social Security survivor benefits because of the depression she suffered after the death of her father some years ago but does not receive any type of counseling to address any remaining issues.

{¶ 36} The CCDCFS intake social worker testified that she substantiated emotional abuse of L.S. by Mother and recommended services through that agency. Mother refused. There was testimony from both the social worker and the guardian ad litem regarding Mother's practice of sharing a bed with her son and her indifference to altering this practice when it was recommended that she do so.

{¶ 37} The trial court further found and the evidence supports that Mother has not and would most likely not be willing to honor or facilitate court-ordered visitation and companionship rights. Mother has repeatedly denied or otherwise thwarted Father's rights to companionship with his son. Mother testified that she was justified in denying Father time with his son because she felt he was in danger and not being properly maintained by Father. She further felt justified because "her issues were not being addressed." Investigations by CCDCFS could not substantiate allegations of abuse by Father, nor did either guardian ad litem observe any reason to alter visitation with Father.

{¶ 38} It is true that Father is delinquent in child support. Because of changes affecting his profession in the bail bond industry, Father's income varied after the original order was issued, causing him to be in arrears in child support. The record supports that the order for child support was modified at some point, and Father, at least at the time of trial, was consistent in discharging his current and past-due child support.

{¶ 39} Considering the parents' criminal history, the court noted that, although each parent has a criminal record, neither parent has been convicted of any offense of violence against a child. While the record does not support the finding that Mother was convicted of aggravated robbery/burglary in 1995, it does appear that Mother has a felony criminal history, predating L.S.'s birth, for which she served six months in prison. Father, on the other hand, has misdemeanor convictions for menacing and disorderly conduct.

{¶ 40} Mother did attempt to establish a residence in Nevada, claiming that she was to be married. She could not recall the name of her fiancé, however, but was willing to forgo all claims to child support if the court would permit her to

leave the state with her son and would terminate all visitation with Father. The motion was ultimately denied, and Mother has not since sought similar relief. She apparently never married the unnamed fiancé.

{¶ 41} It is evident from the record that the trial court considered all of the relevant factors under R.C. 3109.04(F) and that competent, credible evidence supports its finding that it was in L.S.'s best interest to modify the allocation of parental rights and responsibilities.

### C. Harm versus Advantages Analysis

{¶ 42} Finally, in compliance with R.C. 3109.04(E)(1)(a)(iii), the trial judge found that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the child.

{¶ 43} Relying on the psychological evaluations[4] of the parties and the report and testimony of the guardian ad litem, the court found that the harm likely to be caused by a change in environment from mother to father is outweighed by the advantages of the change of environment. Both the psychologist and guardian ad litem expressed concern about the administration of physical discipline. They found, nonetheless, that Father's admission that this conduct was inappropriate weighed in his favor. Mother, on the other hand, repeatedly denied the use of physical discipline despite evidence to the contrary. The psychologist, nonetheless, opined that Mother's conduct constituted a change of circumstances sufficient to warrant a modification of custody. It is true that the psychologist posited at one point that it *may* be in L.S.'s best interest that he be placed with neither parent because of the tendency of both parents to use L.S. to act out their own aggression towards each other. This behavior, however, was found to be more prevalent in Mother. Notwithstanding, the psychologist found Mother to be more concerned with keeping L.S. from having a normal and healthy relationship with Father. Mother's disruption of visitation and her referrals to CCDCFS alleging child abuse that were subsequently found to be unsubstantiated contributed to this finding. Furthermore, the psychologist found, and the GAL confirmed, that Mother repeatedly attempted to elicit "distress" from L.S., particularly after a visit with his father.

{¶ 44} The guardian ad litem similarly recommended that Father be designated residential parent and legal custodian. The GAL found L.S. to interact well with Father and his family and that father and son have a good and loving relationship. On the contrary, the GAL found Mother's behavior inappropriate throughout his involvement with the case. From Mother's manipulation of L.S.

---

4. No psychologist testified at trial. Both parties, however, stipulated to the reports and entered no objection to their admission as exhibits.

as well as those around her, the GAL opined that Mother seemed "bound and determined to deny [Father] a relationship with the child and the child a relationship with his father, at any cost."

{¶ 45} Consequently, the trial court had before it competent credible evidence to support its conclusion that the harm likely to be caused by a change of environment from Mother to Father was outweighed by the advantages of such a change.

{¶ 46} In summary, competent and credible evidence existed to support the trial court's decision to modify the allocation of parental rights and responsibilities. The trial court, therefore, did not abuse its discretion in granting Father's motion and naming him residential parent and legal custodian of L.S.

{¶ 47} Mother's first, third, and fourth assignments of error are not well taken and are overruled.

## II

{¶ 48} In her second assignment of error, Mother claims that her trial counsel was ineffective, in violation of the Ohio and United States Constitutions.

{¶ 49} The constitutional right to effective assistance of counsel applies in criminal proceedings and in certain civil proceedings when the state seeks to infringe a life, liberty, or property interest protected by the Fifth and Fourteenth Amendments. See *Strickland v. Washington* (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674; *In re Travis Children* (1992), 80 Ohio App.3d 620, 625, 609 N.E.2d 1356; *Jones v. Lucas Cty. Children Serv. Bd.* (1988), 46 Ohio App.3d 85, 86, 546 N.E.2d 471. There is no constitutional right, however, to effective representation by counsel in civil cases between individual parents involving visitation and residential-parent status. See *In re West* (Dec. 24, 2001), 4th Dist. No. 01CA8, 2001 WL 1659385; *Carpenter v. Jetter* (Jan. 8, 1996), 12th Dist. No. CA95–01–007, 1996 WL 9610; see, also, *Roth v. Roth* (1989), 65 Ohio App.3d 768, 776, 585 N.E.2d 482.

{¶ 50} Even if this court were to recognize such a right, Mother merely states that her trial counsel was ineffective without setting forth any argument as to how or in what manner this counsel was ineffective. The trial in this case encompassed four days of testimony and addressed several issues. Without more, we cannot possibly fathom how Mother believes her trial counsel was ineffective. Thus, even if Mother was entitled to effective assistance of counsel, we would disregard this assignment of error under App.R. 12(A)(2).

{¶ 51} Mother's third assignment of error is not well taken and is overruled.

## III

{¶ 52} In her fifth assignment of error, Mother contends that the trial court erred in proceeding to trial without first ruling on her motions for removal of the trial judge.

{¶ 53} In a judgment entry journalized November 9, 1999, the trial court found that Mother voluntarily withdrew and "dismissed by agreement" pending motions for removal of the trial judge. Moreover, we note that, although a judge is under a duty to disqualify himself or herself from a particular case where the judge's impartiality is reasonably questioned,[5] it is the Chief Justice of the Ohio Supreme Court or his designee that has exclusive jurisdiction to disqualify a common pleas judge on the grounds of bias or prejudice. Section 5(C), Article IV, Ohio Constitution; R.C. 2701.03; see, also, *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441–442, 8 O.O.3d 438, 377 N.E.2d 775.

{¶ 54} Mother's fifth assignment of error is not well taken and is overruled.

## IV

{¶ 55} In her sixth assignment of error, Mother contends that the trial court erred in proceeding to trial without first ruling on her motion for removal of guardian ad litem, James H. Schulz.

{¶ 56} At the time of trial, two motions for the removal of Schulz were pending. No ruling was made on the motions prior to the commencement of trial, nor did Mother object at any time during the four-day trial to the presence of Schulz in his capacity as guardian ad litem. Schulz questioned witnesses, entered objections, and testified in the capacity of guardian, all without objection by Mother. When asked by the court as to his recommendation for custody in this case, the guardian testified, again without objection by Mother, that Father be named residential parent. Moreover, it appears from the record that the parties stipulated to the admission of the guardian's report and that no objection or other opposition was voiced as to the admission of any of the guardian's exhibits. Absent any objection to the guardian's presence and participation during trial, Mother cannot be heard to complain on review that the trial court erred in failing to rule on her motions to remove the guardian prior to trial.

{¶ 57} Mother's sixth assignment of error is not well taken and is overruled.

---

5. See Canon 3(E) of the Code of Judicial Conduct.

V

{¶ 58}  In her seventh assignment of error, Mother contends that the trial court erred when it denied her the opportunity to present witnesses from Meridia Hillcrest Hospital and Cuyahoga County Child Support Enforcement Agency.

{¶ 59}  The record does not reflect any such denial.  On ·the contrary, the record reflects that Mother did not call any witnesses from these two entities.  Nor was there any pretrial motion precluding any such witnesses from testifying at trial.  Consequently, we see no error.

{¶ 60}  Mother's seventh assignment of error is not well taken and is overruled.

Judgment affirmed.

ANNE L. KILBANE, P.J., and DIANE KARPINSKI, J., concur.