OPINION
{¶ 1} The following matter was submitted on the briefs of the parties. Appellant, James R. Shelton, Jr. ("Father"), appeals from a judgment entry of the Lake County Court of Common Pleas, Domestic Relations Division, denying his motion to show cause and granting the motion to modify a shared parenting agreement of appellee, Stephanie A. Shelton ("Mother"). For the reasons that follow, we affirm.
 {¶ 2} By way of background, Father and Mother were married on May 17, 1996. During the marriage, the parties resided in Lake County, Ohio. The parties had one minor child ("the child") as issue of the marriage. The child's date of birth is February 8, 1999.
 {¶ 3} On April 27, 2001, the parties filed a separation agreement in the Lake County Court of Common Pleas, Domestic Division. The separation agreement set forth the basic terms of the dissolution of their marriage. Included was a shared parenting agreement. The shared parenting agreement named each party as the residential and custodial parent, and established a visitation schedule that divided the child's time with each parent equally. Father was named the residential parent for school purposes. With respect to child support, each party was to pay fifty percent of the child's basic needs. However, Father was required to provide the child with all necessary medical insurance coverage.
 {¶ 4} On July 17, 2001, the parties and the court adopted the separation agreement and shared parenting agreement. As a result, the parties' marriage was dissolved.
 {¶ 5} Mother moved to modify the separation agreement and shared parenting agreement on November 7, 2003. The motion argued that Father's relocation to South Carolina and his failure to comply with the agreed upon terms for child support established a change of circumstances necessitating a modification. Thus, the motion requested that Mother be named the child's residential parent for school purposes and that the visitation schedule be revised accordingly.
 {¶ 6} Father responded via a motion for reallocation of parental rights and responsibilities. The motion for reallocation contended that it would be in the child's best interest to name Father as the sole residential and custodial parent. In support of this contention, Father attested that Mother had denied him his parental visitation rights and that he could best provide for the child's needs.
 {¶ 7} Father also filed a motion to show cause which requested that Mother be found in contempt, based upon her failure to comply with the shared parenting agreement. Again, Father attested that Mother had denied him equal visitation with the child.
 {¶ 8} This matter proceeded to a hearing before the domestic court. The testimony and evidence presented at the hearing established the following facts.
 {¶ 9} Following the dissolution of the parties' marriage, Father and Mother had discussed the possibility of the parties and the child relocating to Colorado. However, Father relocated to Charleston, South Carolina, in late August 2003, and was employed by the federal government. The work schedules of the parties made it difficult for either Father or Mother to transport the child for visitation. Father and Mother discussed the possibility of Mother and the child relocating to South Carolina.
 {¶ 10} The testimony revealed that Mother decided not to enroll the child in pre-school. Instead, Mother paid the child's aunt to baby-sit the child. The child developed a strong relationship with his cousins and enjoyed spending time with them. The child was to be enrolled in the local school district to begin kindergarten classes.
 {¶ 11} Shortly after the dissolution of the marriage, Mother resided with her parents. But at the time of the hearing, Mother was leasing a home and was employed full-time as a paralegal. She also worked a part-time job to supplement her income. Despite her work schedule, Mother had adequate time to spend with the child.
 {¶ 12} In December 2003, Father married his girlfriend, Melanie. In March 2004, he relocated to Colorado Springs, Colorado, with Melanie, and he continued to work for the federal government. Although Father initially testified that he had no family in Colorado, he later conceded that his biological son from a previous relationship resided in Colorado. The evidence showed that Father had failed to pay child support for this son and that he owed $14,873.76 in arrears. At the time of the hearing, Father was living with Melanie's brother in Colorado.
 {¶ 13} The testimony established that the child suffers from sever asthma. Due to his asthma, the child was hospitalized in late November 2003. The child's pediatrician and pulmonologist are located in Ohio. Father had failed to comply with the terms of the shared parenting agreement, as he failed to provide medical insurance. Thus, there were outstanding medical bills and Mother was forced to obtain insurance coverage at her expense.
 {¶ 14} Mother testified that while she believes Father cares for the child, it would be in the child's best interest to attend school in Ohio because of his relationships with his cousins and the medical attention he can receive in Ohio. Likewise, Father does not dispute that Mother loves the child. However, Father testified that it would be in the child's best interest to name him as the sole residential and custodian parent because Mother could not offer the child a stable home.
 {¶ 15} Following the hearing, the domestic court issued a judgment entry denying Father's motion to show cause and motion to reallocate parental rights. The court then granted Mother's motion to modify the shared parenting plan, thereby naming Mother as the primary residential parent and residential parent for school purposes. The court adjusted Father's visitation schedule accordingly. In doing so, the court provided a detailed recitation of facts and conclusions of law. The court concluded that a change in circumstances established it would be in the best interests of the child to name Mother as the primary residential parent and the residential parent for school purposes.
 {¶ 16} From this judgment, Father filed a timely notice of appeal and now sets forth the following assignment of error:
 {¶ 17} "The trial court erred in designating the [Mother] the residential parent of the minor child and overruling the [Father's] motion to show cause."
 {¶ 18} Under his sole assignment of error, Father argues that the trial court erred in granting Mother's motion to modify parental rights and denying his motion to show cause. Father contends that the domestic court's findings in this case were one sided and unobjective and, therefore, were unreasonable, arbitrary, and unconscionable. In support of this contention, Father maintains that the court failed to consider Mother's failure to comply with the agreed upon visitation schedule and the unstable, detrimental home environment created by Mother.
 {¶ 19} In decisions relating to the allocation of parental rights and responsibilities for the care of minor children, the domestic court is granted broad discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. A domestic court's decision regarding these issues is subject to reversal only upon a demonstration of an abuse of that discretion. Masters v.Masters (1994), 69 Ohio St.3d 83, 85. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 20} "When applying an abuse-of-discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. * * * This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures and attitude. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record." In reLS, 152 Ohio App.3d 500, 2003-Ohio-2045, at ¶ 12.
 {¶ 21} The domestic court initially set forth facts demonstrating the change in circumstances which affected the child's custody. See, e.g., R.C. 3109.04(E)(1)(a). Namely, the court found that Father had relocated first to South Carolina and then to Colorado. Mother remained in Ohio, and the child developed a strong relationship with his maternal family members and was planning to enroll in a local kindergarten. Also, the child established a relationship with his health care providers located in Ohio.
 {¶ 22} In allocating or modifying parental rights and responsibilities, the court must review and consider the relevant statutory factors. See, e.g., In re Jacobbeger, 11th Dist. No. 2003-G-2538, 2004-Ohio-6937, at ¶ 29. R.C. 3109.04(F)(1) sets forth factors governing the modification of parental rights and responsibilities, and states that, in determining the best interest of a child, the court shall consider all "relevant factors," including, but not limited to: (a) the wishes of the child's parents; (b) if the court has interviewed the child in chambers regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child; (c) the child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to his home, school, and community; (e) the mental and physical health of all persons involved; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; (g) whether either parent has failed to make all child support payments, including all arrearages, that are required; (h) whether either parent previously has been convicted of or pleaded guilty to any criminal offense; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 23} The court provided the following detailed findings with respect to these statutory factors:
 {¶ 24} "(a) [Mother] requests to be the primary residential parent and have [the child] attend school in Ohio. [The child] will be in kindergarten in August 2004. * * *
 {¶ 25} "[Father] wants to be [the child's] primary residential parent and have [the child] reside in Colorado during the school year. * * *
 {¶ 26} "* * *
 {¶ 27} "(c) [Mother] is not remarried. [The child] visits his maternal grandparents every Sunday and sees all his cousins there at the weekly family get together. * * * [The child] is close to three of his cousins. * * *
 {¶ 28} "[Father] is remarried to Melanie. They have no children. * * * [Father's] fourteen year old son lives about 40 minutes away by car. Father and son have been estranged since 1996. [The child] and Melanie appear to get along well together. [The child] spent a great deal of time with Melanie during his recent stay in Colorado.
 {¶ 29} "(d) * * * [The child] is well adjusted to his home in Ohio. In December 2003, [Mother] and he moved into their own house * * *. [The child] has been in a stable day care environment while his mother works and is able to spend time with numerous members of his extended maternal family in a nurturing environment.
 {¶ 30} "[Father] and [Melanie] have been in a state of flux from August 2003 through trial. They do not yet have a place of their own. * * * Being a young child, he appeared to adapt to [Father's] home. * * *
 {¶ 31} "(e) Absent testimony to the contrary, all adults are in good physical health. However, [the child] suffers from severe asthma with pulmonary complications which has resulted in prior hospitalizations. His doctors are with Rainbow Babies and Children's Hospital of Cleveland, Ohio. Some members of [Mother's] family are smokers * * *. However, [the child] is not barred from being in such an environment. * * * [Father] gave up smoking in the Fall 2003. His Wife does not smoke.
 {¶ 32} "* * *
 {¶ 33} "(g) [Father] has failed to comply with this Court's orders as to his support obligation for [the child's] day care and maintaining [the child's] hospitalization coverage. Further, [Father] has failed to pay child support for his son from his first marriage.
 {¶ 34} "* * *
 {¶ 35} "(i) Since October 2003 through the date of trial, [Father] has had limited parenting time with [the child] since his moves to South Carolina and Colorado. * * * Although [Father] has not received the parenting time with [the child] he once had, the court finds geography and his personal financial condition are the significant reasons for the same. * * * The Court finds [Mother] has not willfully interfered with parenting time. Accordingly, father's show cause is not well taken and is hereby denied.
 {¶ 36} "(j) Establishing residence outside the state: Refer to [foregoing factors]."
 {¶ 37} Based upon its consideration of the statutory factors, the court determined that it was in the best interests of the child to modify the shared parenting agreement to name Mother as the primary residential parent and residential parent for school purposes. The court found Father failed to establish that he could provide the child with a stable home environment. Specifically, the court noted that Father's inability to own or lease a home was evidence of an unstable home environment, as he and Melanie were living with relatives. Also, Father's failure to pay child support and failure to provide the child's medical insurance coverage were important factors in the court's decision. Finally, the court reasoned that the child had formed strong familial relationships with relatives in Ohio and had established a medical relationship with the health care provider's in Ohio. Thus, the court concluded that the father failed to show harm likely to be caused by relocating the child to Colorado was outweighed by the advantages of the child relocating.
 {¶ 38} The court's findings and conclusions are supported by the record and we will not substitute our judgment for that of the domestic court on appeal. There is no evidence that the court acted in an unobjective or one-sided manner. To the contrary, the court noted the pros and cons relating to each party's modification request. In addition the court found it was not in the child's best interest to grant Fathers motion for reallocation of parental rights and responsibilities. Thus, the court did not abuse its discretion in modifying the shared parenting agreement to name Mother as the primary residential parent and residential parent for school purposes. This portion of Father's assignment of error is not well-taken.
 {¶ 39} Father further argues that the court erred by denying his motion to show cause, which requested that Mother be found in contempt due to her failure to comply with the visitation schedule of the shared parenting agreement.
 {¶ 40} A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders. Moraine v. Steger Motors, Inc. (1996), 111 Ohio App.3d 265,268. "In order to be clear and convincing, evidence must leave the trier of fact with the firm conviction or belief that the allegations involved are true." Id., citing Cross v. Ledford (1954), 161 Ohio St. 469.
 {¶ 41} Here, as noted by the domestic court, Father failed to establish that Mother failed to comply with the court adopted shared parenting agreement. Instead, it was Father's relocation to South Carolina and Colorado, in conjunction with his inability to transport the child either to or from these locations, that created a reduction in his agreed upon equal visitation schedule. Thus, the court appropriately denied Father's motion to show cause, and this portion of Father's assignment of error is also not well-taken.
 {¶ 42} Based upon the foregoing analysis, Father's sole assignment of error is without merit. We hereby affirm the judgments of the domestic court granting Mother's motion to modify the shared parenting agreement and denying Father's motion to show cause.
Ford, J., Rice, J., concur.