[Cite as *A.Y. v. E.Y.*, 2023-Ohio-1671.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

A.Y.,                                            :

      Plaintiff-Appellant,          :

                              No. 111872

      v.                                       :

E.Y.,                                            :

      Defendant-Appellee.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED IN PART
**RELEASED AND JOURNALIZED:** May 18, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-20-382999

---

### *Appearances:*

Rosenthal |Thurman | Lane, LLC, Adam J. Thurman, and
Erik B. Quattro, *for appellant.*

Dworken & Bernstein Co., L.P.A. and Kenneth J. Cahill,
*for appellee.*

MARY EILEEN KILBANE, J.:

{¶ 1} Plaintiff-appellant A.Y. appeals the trial court's July 21, 2022 judgment entry of divorce. For the following reasons, we affirm and remand in part.

**Factual History**

{¶ 2} A.Y. and E.Y. were married on May 22, 2004, and three children were born during the marriage: J.Y. (d.o.b. 8/19/2010), S.Y. (d.o.b. 8/8/2012), and El.Y. (d.o.b. 10/2/2014). All three children were born and lived in Virginia except from July 2019 through October 9, 2020. During that time, the family lived in Shaker Heights, Ohio, when E.Y. took a sabbatical from his full-time employment in Virginia and accepted a temporary job assignment in Cleveland, Ohio.

{¶ 3} In July 2020, E.Y.'s full-time work in Cleveland was terminated and on July 31, 2020, he was offered continued employment in Cleveland one day per week. Conflicting testimony was introduced as to whether the family intended to remain in Cleveland. E.Y. testified that he did not plan to remain permanently in Cleveland. Yet in September 2020, E.Y. and A.Y. attempted to purchase a home in Cleveland. Ultimately, the parties did not purchase a home in Cleveland, Ohio.

{¶ 4} From September 23, 2020 through September 29, 2020, A.Y. was hospitalized for a kidney infection and a mental health evaluation. The trial testimony demonstrated A.Y. had a history of mental health issues. Upon discharge, A.Y. did not return to the marital home but sought residence at a domestic violence shelter. A.Y. testified to allegations of domestic violence against E.Y. and concerns about E.Y.'s mental health. A.Y. and E.Y. had minimal contact following A.Y.'s release from the hospital.

{¶ 5} Without A.Y.'s consent, E.Y. packed the family's belongings and, on October 10, 2020, he moved to Virginia with J.Y., S.Y., and El.Y. A.Y. did not have

physical contact with the children from October 2020 through June 2021. E.Y. testified that on numerous occasions in December 2020 and February 2021 he offered to coordinate A.Y.'s visitation with the children, but she declined. The parties executed an interim parenting plan on June 7, 2021, whereby the parties agreed to regular visitation of the children with A.Y.

{¶ 6} Prior to A.Y.'s hospitalization in September 2020, A.Y. was a stay-at-home mother who was primarily responsible for the household and the care of the children. A.Y. homeschooled the children, took them to the doctor, and administered prescribed medications. A.Y. testified that the children were diagnosed with Mast Cell Activation Syndrome ("MCAS"), food protein-induced enterocolitis syndrome ("FPIES"), asthma, and various allergies that required daily medications and monitoring of their food intake and allergic reactions. The children's medical records demonstrated that prior to the family's move to Cleveland, their pediatrician, Dr. Paul Wisman ("Dr. Wisman"), referred the children to specialists at the University of Virginia who then prescribed the children's daily medications. E.Y. testified that upon his return to Virginia, he conferred with Dr. Wisman and discontinued the children's daily medications. A.Y. and E.Y. provided conflicting testimony as to whether the children require continued daily medications.

{¶ 7} The trial testimony raised credibility issues about both A.Y. and E.Y. The parties presented conflicting testimony about E.Y.'s employment, his receipt of and declaration of income, and his behavior towards A.Y. and the children. The trial

testimony also raised concerns about A.Y.'s mental health and how that impacted her decision-making process.

{¶ 8} At the time of the trial, E.Y. resided in Virginia with J.Y., S.Y., and El.Y., and A.Y. continued to live in Cleveland, Ohio.

**Procedural History**

{¶ 9} On October 13, 2020, several days after E.Y. returned to Virginia with the children, A.Y. filed a complaint against E.Y. in Cuyahoga D.R. No. DR-20-382999 seeking a divorce. On October 14, 2020, A.Y. filed an emergency motion for the immediate return of the children to the trial court's jurisdiction. On November 5, 2020, A.Y. filed a motion for temporary support. On November 17, 2020, E.Y. filed a motion to dismiss on the basis that the trial court lacked subject-matter or personal jurisdiction or, in the alternative, because Ohio is an inconvenient forum. On November 30, 2020, E.Y. filed an amended motion to dismiss with supporting documentation. On December 22, 2020, the trial court denied E.Y.'s motion to dismiss.

{¶ 10} On December 29, 2020, the trial court appointed a guardian ad litem ("GAL") on behalf of the children. On April 23, 2021, the parties consented to an agreed judgment entry that granted A.Y. temporary spousal support.[1] On May 4, 2021, E.Y. filed another motion to dismiss based on forum non conveniens that the court denied.

---

[1] On April 28, 2021, E.Y. filed a complaint for divorce in Virginia that was subsequently dismissed.

{¶ 11} On May 13, 2021, E.Y. filed a motion ordering A.Y. to provide her residential address. On June 7, 2021, the parties submitted to an interim parenting plan. On June 15, 2021, the trial court found that A.Y. had enrolled in the Ohio Secretary of State's Safe at Home Program and, in compliance with the program, the trial court denied E.Y.'s motion to order A.Y. to provide her residential address.

{¶ 12} Between July 2021 and February 2022, the parties conducted discovery and filed various motions, and the trial court held hearings. On February 22, 2022, A.Y. filed a motion to adopt a shared parenting plan. On March 3, 2022, E.Y. filed a motion for leave to file an answer and counterclaim instanter that the court granted. On March 10, 2022, the GAL filed his report and recommendation.

{¶ 13} Trial commenced on March 14, 2022, and was attended by A.Y., E.Y., their respective counsel, and the children's GAL. The court conducted trial on March 14, 2022, through March 16, 2022, March 21, 2022, through March 24, 2022, and April 7, 2022, through April 8, 2022. Trial testimony was presented by A.Y., E.Y., Dr. Matthew Mascioli ("Dr. Mascioli"), Dr. Wisman, Shaker Heights Detective Kurt Falke, and the GAL. Counsel submitted the deposition transcripts of relatives L.G. and Sc. Y. in lieu of live testimony.

{¶ 14} On April 13, 2022, A.Y. filed a notice of change of mailing address and requested that the court and clerk of courts update her mailing address to Aurora Road in Solon, Ohio. On May 31, 2022, counsel for A.Y. and E.Y. and the children's GAL filed their closing arguments. On July 21, 2022, the trial court issued a judgment entry of divorce that addressed division of property, spousal support,

allocation of parental rights and responsibilities, federal income tax, children's health care, child support, and cash medical support. Pursuant to the divorce decree, the trial court designated E.Y. the residential parent and legal custodian for the couple's three minor children.

{¶ 15} On August 22, 2022, A.Y. filed a timely notice of appeal presenting these assignments of error:

I.      The trial court erred and abused its discretion when it designated appellee as the residential parent and legal custodian for the minor children.

II.     The trial court erred by improperly ordering appellant to provide her residential address when she is enrolled in Ohio's Safe at Home Program.

III.    The trial court erred by improperly finding that appellee had no attachable income and had no assets to post a bond for the collection of support through the child support enforcement agency.

**Legal Analysis**

**Allocation of Parental Rights and Responsibilities**

{¶ 16} A.Y. argues that the trial court abused its discretion when it found it was in the children's best interests to designate E.Y. as the residential parent and legal custodian for all three children. Specifically, A.Y. contends that (1) the record supports a finding that it was in the children's best interests to be placed with A.Y. as the residential parent and legal custodian, (2) the divorce judgment entry does not state whether the trial court found A.Y. or E.Y. more credible; and (3) although the judgment entry references expert testimony, no trial witnesses were qualified as experts.

{¶ 17} We review a trial court's decision on the allocation of parental rights and responsibilities under an abuse-of-discretion standard. *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 9, citing *Mason v. Mason*, 8th Dist. Cuyahoga No. 80368, 2002-Ohio-6042, citing *Masters v. Masters*, 69 Ohio St.3d 83, 630 N.E.2d 665 (1994). The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463.

{¶ 18} As explained in *In re L.S.*, 152 Ohio App.3d 500, 2003-Ohio-2045, 788 N.E.2d 696, ¶ 12 (8th Dist.):

> [W]here there exists competent credible evidence to support an award of custody, there is no abuse of discretion. * * * *Davis* [*v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997)]. This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude. *Seasons Coal Co. v. Cleveland*, [10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984)]. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. *Davis* [at 419].

{¶ 19} When a trial court allocates parental rights and responsibilities, it shall consider the R.C. 3109.04(F)(1) best interest factors:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶ 20} Applying the foregoing statutory requirements, which were referenced in the trial court's July 21, 2022 divorce judgment entry, we conclude that the trial court did not abuse its discretion when it designated E.Y. the residential parent and legal custodian.[2] The record shows R.C. 3109.04(F)(1)(b), (g), and (h) are not applicable to the instant case. The record demonstrates that both parents wanted custody of the three children, and both parents complied with the June 7, 2021 interim parenting order. The record also demonstrates that the children had positive relationships with both parents and with one another, and the children were well-adjusted to their home, school, and community in Virginia. The record includes the testimony of both A.Y. and E.Y., who questioned the mental health of one another. The record further includes testimony about the children's physical health and whether they suffered from ongoing chronic medical conditions that required daily medications. A.Y. testified that all three children required daily medical therapy whereas E.Y. testified that upon returning to Virginia and under the medical care of the children's pediatrician, Dr. Wisman, he no longer provided the children with daily medications. The record also indicates that the children were

---

[2] While the divorce judgment entry did not specifically address R.C. 3109.04(F)(1)(j), which considers whether either parent established residence outside of the state, the divorce judgment entry states "[t]he children are well-adjusted to their home, school, and community in Virginia." That statement sufficiently indicated the trial court considered the relocation of E.Y. and the children to Virginia.

under the care of Dr. Wisman when they were initially prescribed the medications, although the prescriptions appear to have been written by medical specialists at the University of Virginia.

{¶ 21} In evaluating the mental and physical health of the children, the trial court made the following statements:

> [A.Y.] testified to an extensive history of treatment of the children for such issues as allergies, asthma, Food Protein-Induced Enterocolitis Syndrome (FPIES), and Mast Cell Activation Syndrome (MCAS). A review of the children's medical records shows [sic], however, that there has never been a formal diagnosis of the children with MCAS. *Plaintiff's Exhibits 53-55.* The Court finds it concerning that there was testimony suggesting that [A.Y.] had declined confirmatory testing when it was offered by the children's physicians. Further, expert testimony at trial revealed that the children's medical providers did not think that the children had MCAS or the many allergies that [A.Y.] claimed that they had. These experts testified that the children are, for the most part, healthy and thriving.

July 21, 2022 Judgment Entry, p.5.

{¶ 22} The medical documents contained in the record indicate that the children were treated for several ailments throughout their young lives. The University of Virginia Health System medical records of El.Y., J.Y., and S.Y., marked as Plaintiff's exhibit Nos. 53 through 55 respectively, included references that A.Y. reported that the children were diagnosed with MCAS, but the records do not reflect a formal diagnosis of that condition. Notations within the medical records included statements that the doctors do not typically observe MCAS in children and A.Y. was convinced that El.Y. and J.Y. had MCAS.

{¶ 23} The GAL testified that he spoke with the children's Cleveland pulmonologist and allergy immunologist. The GAL testified that he was told by the pulmonologist that the children did not have significant problems related to asthma, their pulmonary testing was normal, and during examinations he never heard evidence of wheezing. While the pulmonologist also told the GAL that the children's inhalers were to be used on an as-needed basis, the GAL noted the physical prescriptions indicated daily use. The GAL further testified that the allergy immunologist informed him that she did not believe the children had MCAS, and A.Y. did not submit her children to a 24-hour urine test that would have indicated whether they had MCAS. The GAL stated A.Y. was "hypervigilant" about the children and any medical symptoms they exhibited, but there were no signs of medical abuse.

{¶ 24} The GAL's written report and recommendation submitted prior to trial stated he was unable to recommend a residential parent. The GAL believed the determining factor was the credibility of A.Y. and E.Y. and that issue was within the purview of the trier of fact. At trial, the GAL testified that he thought another move could be detrimental to the children and amended his recommendation to designate E.Y. as the residential parent. The GAL further testified that his recommendation was guided in part by geography and if both parents lived near one another, it would be difficult for him to specify a residential parent. Under such circumstances, the GAL felt shared parenting was a possibility.

{¶ 25} A.Y.'s argument that the trial court did not make a finding as to whether A.Y. or E.Y. was more credible lacks merit. A.Y. does not present any case law to support this proposition nor is such a finding required pursuant to R.C. 3109.04(F)(1). Further, the trial court's decision to designate E.Y. as the residential parent and legal custodian impliedly demonstrated that the court found E.Y. was more credible than A.Y.

{¶ 26} Despite A.Y.'s contention to the contrary, the trial court's reliance on the testimony of the children's treating physicians is not an abuse of discretion. The wording in the divorce judgment entry that referenced expert testimony reads: "Further, expert testimony at trial revealed that the children's medical providers did not think that the children had MCAS or the many allergies that Plaintiff claimed that they had. These experts testified that the children are, for the most part, healthy and thriving."

{¶ 27} A.Y. is correct that the two testifying pediatricians — Dr. Wisman from Virginia and Dr. Mascioli from Cleveland — were not qualified as experts but testified as fact witnesses. Additionally, A.Y. correctly states that while Dr. Wisman testified that he did not believe the children had multiple food allergies or MCAS, Dr. Mascioli did not testify to the same conclusions. Dr. Mascioli testified that he was the children's primary pediatrician while they lived in Ohio and his office referred the children to local specialists to manage their ongoing medical conditions. Dr. Mascioli further testified that he did not recall if the children's Virginia medical

records contained diagnoses for their alleged medical conditions or if the diagnoses were contained in a document prepared and submitted to him by A.Y.

{¶ 28} The inconsistencies raised by A.Y. do not constitute an abuse of discretion. The trial court found seven of the ten R.C. 3109.04(F) factors applied to the current situation; Dr. Wisman and Dr. Mascioli's testimony related to only one of those factors — the children's physical health. Additionally, the trial court did not rely exclusively on the pediatrician's testimony, or the court's misstatement of their testimony, to evaluate the children's physical health. The divorce judgment entry specified that in support of the trial court's finding, the court reviewed Plaintiff's exhibit Nos. 53 through 55 and found no formal diagnosis of the children with MCAS.

{¶ 29} We note that it is rare for a GAL not to identify the recommended residential parent and legal custodian prior to trial. Here, the GAL's reluctance to provide such a recommendation in his report demonstrated that the nuances of this case — including E.Y.'s leaving town with the children without A.Y.'s consent, the children's adaptation to life in Virginia, and the difficulty of assessing the credibility of A.Y. and E.Y. — created a unique scenario. For the foregoing reasons, the trial court did not abuse its discretion when it designated E.Y. as the residential parent and legal custodian.

{¶ 30} A.Y.'s first assignment of error is overruled.

**Provision of Residential Address**

{¶ 31} In her second assignment of error, A.Y. argues that the trial court erred when it required her to provide her residential address despite her participation in the Ohio Safe at Home Program. A.Y. relies on R.C. 111.46 and asks this court to vacate the trial court's order requiring A.Y. to provide her residential address. E.Y. counters that A.Y. was required to provide her residential address to ensure receipt of her spousal support and any error was harmless.

{¶ 32} We assume A.Y.'s concerns stem from the two sections in the July 21, 2022 divorce judgment entry that reference addresses. According to the divorce judgment entry, the parties are required to submit their residential addresses and provide notification of relocation. July 21, 2022 Judgment Entry, p.6. Additionally, because A.Y. and E.Y. are subject to a support order, they must notify the Child Support Enforcement Agency of their current mailing and residential addresses and any changes in the future. July 21, 2022 Judgment Entry, p.11.

{¶ 33} On June 8, 2021, A.Y. filed with the trial court proof of her enrollment in the Ohio Safe at Home Program. The trial court issued a corresponding journal entry on June 15, 2021, that found A.Y.'s enrollment in the program required governmental entities to use the address designated under the program — a post office box in Columbus, Ohio — until A.Y.'s participation in the program expired on April 23, 2025.

{¶ 34} On April 13, 2022, A.Y. filed a notice of change of mailing address and requested that the court and clerk of courts utilize a Solon, Ohio address. The trial

court's July 21, 2022 divorce judgment entry referenced the Solon, Ohio address as A.Y.'s residential address — even though A.Y.'s April 13, 2022 notice indicated it was a mailing address — and the divorce judgment entry was served at that same address. In other words, the divorce judgment entry reflected the mailing address provided in A.Y.'s April 13, 2022 change of address notice. Presumably, A.Y.'s Solon, Ohio mailing address represented her address issued under the Safe at Home Program.

{¶ 35} We find that the trial court complied with the Ohio Safe at Home Program when it listed A.Y.'s designated mailing address as her residential address on page six of the divorce judgment entry. Pursuant to A.Y.'s participation in the Ohio Safe at Home Program, she may utilize the program's designated mailing address in lieu of her residential address until expiration of the program. Similarly, we anticipate A.Y. will use the mailing address designated by the Ohio Safe at Home Program in response to the custody order and, if necessary, provide proof of her participation in the program to the Child Support Enforcement Agency.

{¶ 36} A.Y.'s second assignment of error is overruled.

**Posting a Bond**

{¶ 37} In her third assignment of error, A.Y. cites R.C. 3121.03 in support of her contention that the trial court should have required E.Y. to post a bond or, alternatively, entered a withholding order for A.Y.'s collection of support. E.Y. argues that the trial court's divorce judgment entry inadvertently included language

that stated E.Y. had no attachable income or assets to post a bond and, the error may be addressed through a nunc pro tunc judgment entry.

{¶ 38} R.C. 3121.03 addresses the withholding or deduction of income or assets of an obligor, such as E.Y., who is required to remit child or spousal support. R.C. 3119.01; R.C. 3121.01(A). Pursuant to R.C. 3121.03(A)(1), an employer must withhold an employee's income in satisfaction of child or spousal support and forward the withheld amount to the office of child support until notice of termination is received from the court or child support enforcement agency. If the court finds that the obligor has nonexempt funds on deposit in an account in a financial institution, the court may require the financial institution to deduct a specified amount in satisfaction of the support order and send the deducted amounts to the office of child support. R.C. 3121.03(B)(1). Additionally, a court may order the obligor to enter a cash bond with the court if the obligor does not receive income from an employer. R.C. 3121.03(C). The requirement of an obligor to post a bond is not typically necessary where the obligor is employed and his wages may be withheld under R.C. 3121.03. *See Szymczak v. Szymczak*, 136 Ohio App.3d 706, 716, 737 N.E.2d 980 (8th Dist.2000) (Imposition of a bond was appropriate where the obligor's self-employment and operation of his own company made withholding from his employer impossible.).

{¶ 39} In accordance with the applicable statutes, the trial court ordered E.Y.'s monthly payments of support to be withheld or deducted from his income or assets and to be paid through the Ohio Child Support Payment Central. Based upon

the trial court's withholding order, E.Y. was not required to post a bond. A.Y.'s third

assignment is without merit and is overruled.

{¶ 40} However, within the divorce judgment entry, immediately following

the above-described withholding order, the trial court included this conflicting

language:

*Method to Secure Support Payments*

The Court finds that the support obligor has no attachable income and
has no assets to post a bond.

*IT IS THEREFORE ORDERED, ADJUDGED AND DECREED* that the
support obligor shall seek employment, if able to engage in
employment, and shall immediately notify the CJFS-OCSS, in writing,
upon commencement or change of employment (including self-
employment), in receipt of additional income/monies, obtaining
ownership of asset of value of $500.00 or more, receipt or termination
of benefits or the opening of an account at a financial institution. The
support obligor shall include a description of the nature of the
employment and the name, business address and telephone number of
any employer. The support obligor shall immediately notify the CJFS-
OCSS of any change in the status of an account from which support is
being deducted or the opening of a new account with any financial
institution.

(Emphasis sic.), July 21, 2022 judgment entry, p. 10.

{¶ 41} It appears that the above-cited paragraph was inadvertently included

in the judgment entry because (1) the language in question does not comport with

the facts of the case and (2) the language conflicts with the paragraph in the divorce

judgment entry that requires E.Y. to satisfy his support payments through a

withholding order. Thus, we remand this matter for the limited purpose of the trial

court to amend the divorce judgment entry to accurately reflect the court's disposition on withholding.

{¶ 42} Judgment affirmed, and case remanded in part for proceedings consistent with this opinion.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
EILEEN T. GALLAGHER, J., CONCUR