OPINION
{¶ 1} Sara Erbes appeals from a judgment of the Greene County Court of Common Pleas, Juvenile Division, which granted custody of her son, P.T.P., to his father, Timothy T. Thatcher.
 {¶ 2} P.T.P. was born in January 1993. His parents were never married to each other. A few months after his birth, Thatcher filed a pro se complaint for visitation and, in November 1993, the trial court awarded visitation. It was undisputed at that time that Erbes would be the residential parent.
 {¶ 3} In May 2004, Thatcher filed a motion addressed to several issues, including Erbes's alleged interference with visitation. In July 2004, after P.T.P. was charged with delinquency for rape, gross sexual imposition, and importuning and was told by a court that he could no longer reside with Erbes's 9-year-old daughter, Thatcher filed a pro se complaint seeking custody of P.T.P. The trial court ordered that P.T.P. should live with his father in Xenia while the complaint was pending.
 {¶ 4} The trial court held a hearing on January 25 and April 26, 2005. Following the hearing, the trial court concluded that no decree of legal custody pertaining to P.T.P. had ever been issued by the court. As such, it handled the matter as an original custody determination, rather than a change of custody, applying the best interest standard. The court found that it was in P.T.P.'s best interest for Thatcher to have legal custody.
 {¶ 5} Erbes raises three assignments of error on appeal from the trial court's judgment. We begin our discussion with the third assignment of error, which addresses the weight of the evidence.
 {¶ 6} III. "THE TRIAL COURT ERRED BY GRANTING MR. THATCHER PARENTAL RIGHTS AND RESPONSIBILITIES FOR THE MINOR [P.T.P.] BECAUSE THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} Numerous witnesses testified at the hearing, including a clinical psychologist, a teacher, a school counselor, a caseworker with Children Services, a psychotherapist, and P.T.P.'s parents. P.T.P.'s teacher and school counselor from Springboro, where he had lived with his mother, testified that he had exhibited some behavior problems at their school. For example, he had reported that his stepfather hit him and that another neighborhood boy had witnessed one instance of such conduct, although the neighbor denied any knowledge of this incident. He also frequently commented on the bodies of his female classmates. On one occasion, his mother found a sexually explicit sketch with crude language in P.T.P.'s bag and brought it to the school's attention, believing that another student had given it to him. After some investigation, P.T.P. admitted that he had drawn the picture. His teacher described this picture and the corresponding language as extremely shocking. The teacher identified other disciplinary problems as well.
 {¶ 8} The Children Services caseworker testified that she had investigated a complaint from P.T.P.'s paternal uncle that P.T.P. had had sexual contact with his two sons, ages 5 and 8, at a sleepover. The younger boys alleged that, at P.T.P.'s urging, they had sucked on his penis, and that he, in turn, had performed the same act on the younger of the two boys. The caseworker concluded that the younger boys' accounts were truthful and that P.T.P.'s was not. Delinquency charges that were filed against him were resolved by his admission to a reduced charge of sexual imposition. The caseworker testified that Erbes had minimized P.T.P.'s conduct, while Thatcher had been very cooperative and proactive. The caseworker had also investigated P.T.P.'s claims of physical abuse and found them to be unsubstantiated.
 {¶ 9} Dr. Esther Battle, the clinical psychologist, testified that, although Erbes reported that P.T.P. had done well in Springboro schools, his records showed that he had experienced problems there as well as in Xenia. She stated that P.T.P. hoped that he would be able to go back to live with his mother in Springboro if he performed badly in Xenia while living with his father. She also testified that P.T.P. did not have an adequately developed conscience, was manipulative, and distorted reality to avoid getting into trouble. Dr. Battle expressed concern that Erbes apparently did not see a connection between P.T.P.'s sexual acting out at school and his sexual abuse of his cousins. Battle observed that Erbes tended to accept P.T.P.'s accounts of events at face value, without the skepticism that an adult might be expected to show given the nature of the events. She also noted that Erbes criticized Thatcher in front on P.T.P., whereas Thatcher did not make negative comments about Erbes.
 {¶ 10} Lynn Routsong Wiechers, a psychotherapist who saw P.T.P. ten times, testified that he showed symptoms of depression and anxiety. Like Dr. Battle, she concluded that P.T.P. acted out in an effort to be sent back to his mom. She reported that she was not told by Erbes that P.T.P. had been accused of inappropriate sexual behavior at school or with his cousins when he was brought in for therapy and that, when P.T.P. was confronted with these accusations, he denied any sexual abuse of other kids. Generally, she observed that he did not take responsibility for his actions. She also stated that Erbes had minimized P.T.P.'s behavior by blaming his cousins and was often "emotionally charged." Wiechers opined that returning P.T.P. to his mother's home could cause him to become more unstable.
 {¶ 11} Erbes and Thatcher also testified. Both parents expressed love for P.T.P. and a desire to help him. Erbes was somewhat reluctant to acknowledge that P.T.P. had behavioral problems and was inclined to believe his version of events. Thatcher was more inclined to believe that P.T.P.'s behavior problems were serious.
 {¶ 12} The guardian ad litem submitted a report in which she gave a very detailed account of her discussions with P.T.P., Thatcher, and Erbes and recommended that P.T.P. stay with his mother. She did not provide any reasoning for this recommendation or state any other factual conclusions.
 {¶ 13} The evidence established that both parents loved P.T.P., but the court could have reasonably concluded that Thatcher's home offered a more stable and constructive environment for addressing P.T.P.'s behavioral problems. In fact, Erbes seems to have been the only person who expressed doubt about whether P.T.P. was really the aggressor in the incident with his cousins. It was also apparent that she credited P.T.P.'s accounts of events in situations where other adults were likely to have been more skeptical. Indeed, P.T.P.'s inability to manipulate his father as much as his mother seemed to be at the root of many of his behavioral problems in school after moving to Xenia; he hoped that if he behaved badly, he would be sent back to live with his mother. Substantial evidence suggested that Thatcher reacted more proactively to P.T.P.'s improper behavior than Erbes did and that P.T.P.'s behavior warranted significant intervention. The trial court also could have reasonably concluded that, as the residential parent, Thatcher was more likely to foster a positive relationship with Erbes. The trial court's determination that it was in P.T.P.'s best interest to designate his father as the residential parent was not against the manifest weight of the evidence.
 {¶ 14} The third assignment of error is overruled.
 {¶ 15} I. "THE TRIAL COURT ERRED WHEN IT DID NOT SPECIFICALLY FIND A CHANGE IN CIRCUMSTANCES AND FAILED TO PROPERLY ADDRESS THE FACTORS FROM [R.C.] 3109.04(F)(1)(A)-(J) IN DETERMINING A REALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES."
 {¶ 16} Erbes claims that the trial court failed to find a change of circumstances prior to reallocating parental rights, as required by R.C. 3109.04(E)(1)(a). The trial court had concluded that this was an original custody determination, rather than a reallocation of parental rights, because the court's earlier judgment had related only to visitation.
 {¶ 17} As we mentioned above, Thatcher filed a pro se complaint for visitation when P.T.P. was a few months old, and the trial court awarded Thatcher visitation. Thatcher's complaint was a form document styled a "Complaint for Custody" on which Thatcher had crossed out the word "Custody" and written "Visitation." When the trial court ruled on the request, it described the document as a "Complaint for Custody in the Alternative Visitation." Erbes claims that these documents, coupled with the orders that Thatcher pay child support and have visitation with P.T.P., constituted a "de facto designation of residential parent." Accordingly, Erbes claims that the court was required to find a change of circumstances and to analyze the factors under R.C. 3109.04(F)(1) (a-j) before changing custody. These factors include the child's wishes, the child's relationships with parents and siblings, the child's adjustment to home, school, and community, and which parent is more likely to facilitate visitation.
 {¶ 18} Although it acknowledged the "imprecise language" of court documents when Thatcher sought visitation in 1993, the trial court concluded that its decrees had not designated Erbes as the residential parent and legal custodian. In our view, the trial court was in the best position to determine the nature of its prior order. Although the court could have treated the prior order as a "de facto designation" of custody, we cannot conclude that it erred finding that its determination was limited to the issue of visitation.
 {¶ 19} Because the court found that its previous order affected only visitation, it was not required to find a change of circumstances, as Erbes claims. Moreover, we are of the opinion that the trial court did consider the factors set forth at R.C.3109.04(F)(1). Erbes simply interprets the evidence pertaining to those factors differently than the trial court did. For example, she maintains that P.T.P.'s grades and behavior suffered when he switched to the Xenia school after moving to his father's house. The trial court found that P.T.P. had had problems at school both before and after the move and that he had admitted to behaving badly after the move in an attempt to manipulate the situation. In short, P.T.P. behaved badly so that he could move back to his mother's home, where he was less accountable for his actions. Under these circumstances, the trial court could have reasonably concluded that P.T.P.'s poor behavior in the Xenia school did not justify returning him to his mother. Similarly, the trial court could have reasonably discounted P.T.P.'s desire to live with his mother when that desire is viewed in the context of his apparent desire for less accountablility for his inappropriate behavior.
 {¶ 20} The trial court did not err in concluding that this was an original custody determination and in weighing the evidence as it did.
 {¶ 21} The first assignment of error is overruled.
 {¶ 22} II. "THE TRIAL COURT ERRED WHEN IT DID NOT FACTOR IN THE GUARDIAN AD LITEM'S RECOMMENDATION THAT MRS. ERBES RETAIN LEGAL CUSTODY OF THE MINOR CHILD."
 {¶ 23} Erbes contends that the trial court erred in failing to give more weight to the guardian ad litem's recommendation that P.T.P. reside with his mother.
 {¶ 24} A trial court is not required to follow the recommendation of a guardian ad litem. In re P.P., Montgomery App. No. 19582, 2003-Ohio-1051, ¶ 24, citing In re Haywood,
Allen App. Nos. 1-99-93, 1-99-94, 1-99-95, 2000-Ohio-1740. The function of a guardian ad litem is to consider the best interests of a child and to make a recommendation to the court, but the ultimate decision in any proceeding is for the judge, and the trial court does not err in making an order contrary to the recommendation of the guardian ad litem. In re Howard (1997),119 Ohio App.3d 201, 206, 695 N.E.2d 1.
 {¶ 25} The guardian ad litem's report contained a detailed account of her conversations with both parents and with P.T.P. It also mentioned a conversation with Dr. Battle, although it did not otherwise refer to that conversation. The report was very short on analysis, however. It simply stated the guardian ad litem's opinion that P.T.P.'s best interest would be served by staying with his mother and continuing counseling.
 {¶ 26} The trial court had also heard the parents' testimony at the hearing, along with extensive testimony from Dr. Battle, a teacher, a school counselor, a Children Services caseworker, and a psychotherapist. The trial court could have reasonably concluded that the testimony offered by the non-parent witnesses provided valuable insight into the family dynamics that was not reflected in the guardian ad litem's report. Moreover, Dr. Battle commented at the hearing about her conversation with the guardian ad litem, stating that the guardian ad litem had "found [P.T.P.] an appealing youngster and she did not do a thorough investigation or questioning concerning the alleged sexual abuse because she didn't want to stress him * * *." Dr. Battle further stated: "My impression was that although she didn't question him specifically or investigate the alleged sexual abuse[;] based on her positive impressions from talking with him, her conclusion was that he was believable and that he probably did not do the sexual abuse as charged." The report supports Dr. Battle's assertion that the guardian ad litem had not spoken with P.T.P. about the allegations of sexual abuse.
 {¶ 27} A central issue in the dispute over who should have custody of P.T.P. was which parent was better equipped to deal with his behavioral problems, including the sexual abuse of his cousins. Almost all of the witnesses, other than Erbes, acknowledged that P.T.P. was acting out sexually, and the guardian ad litem did not address this issue. Under these circumstances, the trial court did not abuse its discretion in deviating from the guardian ad litem's recommendation.
 {¶ 28} The second assignment of error is overruled.
 {¶ 29} The judgment of the trial court will be affirmed. . . . . . . . . . .
Brogan, J. and Donovan, J., concur.