[Cite as *In re D.J.R.*, 2012-Ohio-698.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96792**

# IN RE: D.J.R.
# Minor Child

# (Appeal by Mother)

# JUDGMENT:
# AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU 09111672

**BEFORE:** Kilbane, J., Celebrezze, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 23, 2012

**ATTORNEY FOR APPELLANT**

Martin Keenan
Buckeye Legal Center
11510 Buckeye Road
Cleveland, Ohio 44104

**APPELLEE**

W.R. III, pro se
4774 Derbyshire Drive
North Randall, Ohio 44128

**GUARDIAN AD LITEM**

Steven E. Wolkin
820 W. Superior Avenue
Suite 510
Cleveland, Ohio 44113-1384

MARY EILEEN KILBANE, J.:

{¶1} Appellant-mother appeals the decision of the juvenile court that granted appellee-father's application to determine custody of D.J.R. For the reasons set forth herein, we affirm.[1]

{¶2} D.J.R. was born in 1995 and resided with his mother. In August 2008, mother filed a domestic violence petition against father in the domestic relations division of the court, and on November 14, 2008, the parties entered into a "consent agreement" in that matter. On January 23, 2009, father filed a civil action for defamation against mother.

{¶3} On June 12, 2009, father filed an application to determine custody of D.J.R. pursuant to R.C. 2151.23. The matter was set for hearing on October 16, 2009, but on October

---

[1]Although our review has been limited, nothing herein precludes mother from filing a motion to modify parental rights if a change in circumstances occurs. *See* R.C. 3109.04. *In re B.W.*, 8th Dist. Nos. 96551 and 96550, 2011-Ohio-4513, 2011 WL 3925661.

9, 2009, mother filed a motion for a continuance. The hearing was rescheduled to December 10, 2009. Father, mother, and mother's counsel appeared on that date, but the parties could not agree upon an interim visitation schedule. The hearing was then continued until March 1, 2010. On February 25, 2010, the mother submitted a trial brief in opposition to father's application, asserting that the child had been subject to excessive corporal punishment during visitation with his father and had witnessed domestic violence.

{¶4} All parties and their attorneys appeared at the March 1, 2010 hearing. The magistrate noted, however, that mother had filed a trial brief that contained written statements from the child, in contravention of R.C. 3109.04(B)(3).

{¶5} On March 24, 2010, mother filed a petition for civil stalking or sexually oriented offense protection order against the father and his wife. On August 3, 2010, this matter was dismissed after the trial court found that "petitioner has not offered evidence that [the * * *minor is] in imminent danger from respondents." Mother appealed to this court, but the matter was dismissed for failure to file a brief. On November 29, 2010, mother filed a second petition for civil stalking or sexually oriented offense protection order against father and his wife. On December 3, 2010, this matter was also dismissed.

{¶6} On April 5, 2010, Steven Wolkin, the Guardian ad Litem ("GAL"), filed a motion to add Cuyahoga County Department of Children and Family Services ("CCDCFS") as a party herein, and a further pretrial was scheduled for June 9, 2010. Mother filed a motion to continue the June 9, 2010 pretrial, but the trial court denied the motion and ordered that mother and D.J.R. meet with the GAL and the social worker on the following day. The court further ordered the mother to cooperate with the GAL, CCDCFS, and the court's diagnostic clinic in connection with the court's custody evaluation.

{¶7} The matter was scheduled for a follow-up pretrial on September 16, 2010. On that date, mother failed to appear, and the GAL advised the court that father had complied with the requirements for a custody assessment, but that mother had not complied and had not completed the psychological evaluation. The GAL also advised the court that delinquency proceedings were filed against D.J.R., and that he was now living with his father. The court then temporarily transferred custody of D.J.R. to his father until trial on the merits pursuant to Juv.R. 13(A).

{¶8} On September 20, 2010, mother's counsel filed a motion to withdraw, and on October 5, 2010, the court granted this motion and continued the custody hearing to November 18, 2010. On that date, mother filed a pro se motion to continue the custody hearing, which the court granted. The hearing was rescheduled to February 15, 2011. On February 11, 2011, mother filed another pro se motion for continuance, and the matter was continued to March 18, 2011. At the request of the GAL, the hearing was rescheduled to March 29, 2011.

{¶9} On February 9, 2011, D.J.R. was found to be delinquent in separate proceedings. The court, adjudicating that matter, further found that his "continued residence in or return to home would be contrary to his best interests and welfare." According to the GAL, D.J.R. was briefly placed in the Juvenile Detention Center, then placed in the Cleveland Christian Home.

{¶10} The GAL issued his report on February 22, 2011. The report outlined the GAL's repeated unsuccessful attempts at contacting mother and obtaining information from her. The mother had also failed to cooperate with social workers and failed to cooperate in establishing a visitation schedule for D.J.R. and in obtaining counseling for him. She seemed to have difficulty in caring for the child and her behavior was erratic. The GAL, according to the assessment of Dr. Chris Dedosky, indicated that D.J.R. had substance abuse and impulse control issues and was at risk of committing violent behavior.

**{¶11}** The GAL also opined that mother had made various allegations against father, seemed to be in need of counseling, and had used the legal process to thwart D.J.R.'s visitation with his father. The GAL noted that father has been employed for six years and was supporting his other children. He stated that D.J.R.'s academic performance and attendance were better while he lived with his father, but he noted an instance when father had left D.J.R. unsupervised, which ultimately led to him being placed in the Juvenile Detention Center. In addition, during the time D.J.R. lived with his mother and attended the Cleveland School District, an Individualized Education Plan ("IEP") was put into place for him, but no IEP was prepared by the Warrensville Heights School District after the child moved in with his father.[2]

**{¶12}** By March 2011, mother had new counsel. On March 21, 2011, mother's new counsel filed a motion to withdraw and to continue the matter. The court denied the request and noted:

> This is mother's third request for a continuance to obtain counsel. Mother has been represented by three different attorneys while this matter has been pending. The last time mother was granted a continuance to obtain counsel, the journal entry stated that she would not be granted a third continuance to obtain counsel.

**{¶13}** The March 29, 2011 hearing on the issue of custody of D.J.R. was scheduled to start at 9:00 a.m. Neither mother nor her attorney appeared at this time. The trial court delayed the matter for one hour pending their arrival and then proceeded in their absence. Father testified that he has five other children, three of whom live with him. He has a steady job and supports his children. He testified that mother had initiated various actions to keep him from D.J.R., and she failed to arrange court-ordered family counseling. Father had attempted to

---

[2]We also note, that although a juvenile court is to consider the recommendation of the GAL, it is not required to follow that recommendation. *See In re P.T.P.*, 2d Dist. No. 2005 CA 148, 2006-Ohio-2911, 2006 WL 1575067.

arrange counseling but could not, because he is the noncustodial parent. He stated that while with him, the child does well in school and has other family members nearby.

**{¶14}** The GAL testified that the CCDCFS determined that mother had instigated the child's complaints against his father, and that the complaints were deemed unsubstantiated. The GAL opined that father receive custody of D.J.R.

**{¶15}** The magistrate subsequently concluded, following consideration of the factors set forth in R.C. 3109.04, that it is in the child's bests interest to grant father's application for custody. On April 15, 2011, the trial court adopted the magistrate's decision and granted the father's application for custody. The mother now appeals and assigns the following error for our review:

Assignment of Error

The trial court erred in granting the Appellee's application to determine custody.

**{¶16}** Decisions concerning the allocation of parental rights and responsibilities rest within the sound discretion of the trial court. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159. An abuse of discretion is more than an error in law; rather it connotes that the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Under the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. *Id.*

**{¶17}** As explained in *In re L.S.*, 152 Ohio App.3d 500, 2003-Ohio-2045, 788 N.E.2d 696 (8th Dist.):

> [W]here there exists competent credible evidence to support an award of custody, there is no abuse of discretion. * * * *Davis* [*v. Flickinger* (1997)], 77 Ohio St.3d at 418, 674 N.E.2d 1159. This highly deferential standard of review

rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. *Davis*, 77 Ohio St.3d at 419, 674 N.E.2d 1159.

**{¶18}** Pursuant to R.C. 2151.23(A)(2),the juvenile court has jurisdiction "to determine the custody of any child not a ward of another court of this state * * *." Pursuant to R.C. 2151.23(F)(1), the best interest standard set forth in R.C. 3109.04 applies in initial actions to allocate parental rights in cases involving children of unmarried parents. *See also In re Poling*, 64 Ohio St.3d 211, 594 N.E.2d 589 (1992); *Francis v. Westfall*, 7th Dist. No. 03-JE-21, 2004-Ohio-4543, 2004 WL 1931779; *In re Custody of Shepherd*, 4th Dist. No. 98 CA 2586, 1999 WL 163422 (Mar. 19, 1999).

**{¶19}** Pursuant to R.C. 3109.04(F)(1), the court must consider:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether * * * there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; * * *.

{¶20} Applying the foregoing, we conclude that the trial court did not abuse its discretion in awarding custody of D.J.R. to father. The record demonstrates that the child had positive family interactions at father's house and was, for the most part, better adjusted to school while living with his father. The record also demonstrates that mother lodged many allegations against father that were determined to be unsubstantiated. Mother also repeatedly delayed the matter by filing numerous continuances and obtaining and discharging counsel. She also repeatedly failed to comply with the orders of the trial court, then ultimately failed to appear for the custody hearing. The GAL opined that the mother appeared to be in need of counseling and repeatedly thwarted court-ordered visitation. Although D.J.R. had been adjudicated delinquent while living with his father, his father appeared, overall, better able to care for him.

{¶21} The assignment of error is not well taken.

{¶22} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
SEAN C. GALLAGHER, J., CONCUR