[Cite as *In re A.M.S.*, 2012-Ohio-5078.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 98384

IN RE: A.M.S.
A Minor Child

(Appeal by Mother)

JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Juvenile Division
Case No. CU-06110796

BEFORE:    Blackmon, A.J., Jones, J., and S. Gallagher, J.

RELEASED AND JOURNALIZED:          November 1, 2012

**ATTORNEY FOR APPELLANT**

Mary V.G. Walsh
4403 St. Clair Avenue
Euclid, Ohio 44103


**ATTORNEY FOR APPELLEE**

Teddy Sliwinski
5800 Fleet Avenue
Cleveland, Ohio 44105

**GUARDIAN AD LITEM**

Mark Witt
6209 Barton Road
North Olmsted, Ohio 44070

PATRICIA ANN BLACKMON, A.J.:

{¶1}   Appellant E.S.[1] ("mother") appeals the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, reallocating parental rights of her son, A.M.S., to his father, appellee, A.K.   Mother assigns the following errors for our review:

> **I. The trial court erred in finding that there had been a change of circumstances of the minor child or his legal custodian.**
>
> **II.  The trial court abused its discretion in changing custody of the child.**

{¶2}   Having reviewed the record and pertinent law, we affirm the juvenile court's decision.[2]   The apposite facts follow.

{¶3} Pursuant to an agreed judgment entry, dated May 12, 2008, mother was awarded custody of the parties' son, A.M.S. (d.o.b. 3/9/2006).   A.M.S. was born with a hole in his heart, had undergone surgery in 2007, and will undergo more surgeries as he grows older.

{¶4} The custodial agreement required mother to take A.M.S. to his doctor's appointments and to share son's medical information with father.   Mother and father were also required to   go through family counseling.   In addition, because father had pleaded

---

[1]The parties are referred to herein by their initials or title in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.

[2]Although our review has been limited, nothing herein precludes mother from filing a motion to modify parental rights if a change in circumstances occurs. *See* R.C. 3109.04. *In re B.W.*, 8th Dist. Nos. 96550 and 96551, 2011-Ohio-4513.

guilty to telephone harassment of mother, there was supervised visitation with A.M.S. at a neutral location until father's probation ended.

{¶5} On June 21, 2011, father filed a motion for an emergency hearing alleging that mother was consistently late for the supervised visitation, had failed to provide medical information as required, and that A.M.S. was seriously overweight. Later, in September 2011, father filed a motion to hold mother in contempt for consistently being late for the supervised visitation. At a hearing on November 18, 2011, mother agreed to have A.M.S. visit with father for a full week at his home to make up for the missed time.

{¶6} In November 2011, father refiled a previously withdrawn motion to modify custody of A.M.S. The hearing was conducted on March 30, 2012. At the hearing, father testified that he was extremely concerned that A.M.S. was very overweight in light of his heart condition, that mother was not taking the appropriate steps to address son's weight gain, and guard against the early onset of diabetes that is prevalent in father's family. Father stated that mother's smoking around A.M.S. poses an additional risk, and that, at times, he has smelled secondhand smoke on their son.

{¶7} Father also testified that A.M.S. has a "crooked foot" that he brought to mother's attention a year ago, but she had failed to have their son seen by a podiatrist. Father stated that mother has missed doctor's appointments, has been uncooperative when he offers to take A.M.S. to the appointments, and continues to inadequately update him when the appointments are kept.

{¶8} In addition, father testified that he is concerned that mother allows her stepfather, who was verbally and physically abusive to her, to babysit A.M.S. Father also stated that mother also allows niece's boyfriend, a convicted heroin felon, to babysit A.M.S.

{¶9} Father further testified that mother once filed a police report stating that A.M.S. was abused by children in father's neighborhood. Mother reported it to 696-KIDS, and after an investigation, the report was found to be unsubstantiated. Father stated that for a while after mother's allegation, some of the children stopped playing with A.M.S.

{¶10} Finally, father testified that he is now retired and thus available to provide the full-time care and attention that A.M.S. needs to combat his health condition. Father stated that he has been working to bring down A.M.S.'s weight through proper nutrition and that he had begun to lose weight. Father testified that his fiance_e, who lives with him, is a registered nurse and has been helping A.M.S. to lose weight. Father stated that his home is located in a better school district than mother's and A.M.S. would make more progress academically if custody was transferred.

{¶11} Mark Witt, the guardian ad litem ("GAL") for A.M.S., also testified about the medical issues surrounding the parties' son, confirmed that there were communication difficulties between the father and mother regarding A.M.S.'s well being. The GAL confirmed that A.M.S. was very overweight given his heart condition, that he had a

"crooked foot" that had not been addressed, and that there was a lack of medical attentiveness on the part of the mother.

{¶12} The GAL testified that although A.M.S. was well adjusted at both homes and that both parents provided good environments in the respective locations, A.M.S. expressed a desire to live with his father. The GAL testified that the father had a bigger home with a large yard, that A.M.S. had developed friendships with other children in the neighborhood, and that he had a good relationship with father's fiance_e. The GAL recommended that the trial court should award custody to the father.

{¶13} Mother testified that she advised father of A.M.S.'s medical appointments via email through the neutral visitation center and more recently through direct emails. Mother testified that she has been addressing medical needs, that she does not smoke in the house, and that her niece's boyfriend does not babysit A.M.S.

{¶14} After hearing the testimony, the magistrate recommended that custody be transferred immediately to father. On April 16, 2012, mother filed her objections to the magistrate's recommendation. On April 19, 2012, the trial court adopted the magistrate's recommendation and awarded custody of A.M.S. to his father.

{¶15} Thereafter, mother requested finding of fact and conclusion of law. On May 18, 2012, mother filed the instant appeal, which rendered her request for finding of fact and conclusion of law moot.

## Child Custody and Change of Circumstances

{¶16} We will address both assigned errors together because of their common basis in fact and law. Mother argues the trial court erred when it transferred custody of A.M.S. to his father.

{¶17} Decisions concerning the allocation of parental rights and responsibilities rest within the sound discretion of the trial court. *In re D.J.R.,* 8th Dist. No. 96792, 2012-Ohio-698, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159. An abuse of discretion is more than an error in law; rather it connotes that the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Under the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. *Id.*

{¶18} As explained in *In re L.S.*, 152 Ohio App.3d 500, 2003-Ohio-2045, 788 N.E.2d 696 (8th Dist.):

> **[W]here there exists competent credible evidence to support an award of custody, there is no abuse of discretion. * * * *Davis* [*v. Flickinger* (1997)], 77 Ohio St.3d at 418, 674 N.E.2d 1159. This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. *Davis*, 77 Ohio St.3d at 419, 674 N.E.2d 1159.**

{¶19} Pursuant to R.C. 2151.23(A)(2), the juvenile court has jurisdiction "to determine the custody of any child not a ward of another court of this state * * *."

Pursuant to R.C. 2151.23(F)(1), the best interest standard set forth in R.C. 3109.04 applies in initial actions to allocate parental rights in cases involving children of unmarried parents. *See also In re Poling*, 64 Ohio St.3d 211, 1992-Ohio-144, 594 N.E.2d 589 (1992); *Francis v. Westfall*, 7th Dist. No. 03-JE-21, 2004-Ohio-4543; *In re Custody of Shepherd*, 4th Dist. No. 98 CA 2586, 1999 Ohio App. LEXIS 1238.

**{¶20}** Pursuant to R.C. 3109.04(F)(1), the court must consider:

**(a) The wishes of the child's parents regarding the child's care;**

**(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;**

**(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;**

**(d) The child's adjustment to the child's home, school, and community;**

**(e) The mental and physical health of all persons involved in the situation;**

**(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;**

**(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;**

**(h) Whether * * * there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;**

**(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other**

**parent's right to parenting time in accordance with an order of the court; * * *.**

{¶21}   Applying the foregoing, we conclude that the trial court did not abuse its discretion in awarding custody of A.M.S. to father.   The record demonstrates that the trial court considered the factors outlined in R.C. 3109.04(F)(1), and in particular A.M.S.'s health.   The evidence established that A.M.S., who was born with a hole in his heart, was significantly overweight.     At the time of the hearing, A.M.S. was six years old, approximately four feet tall, and weighed 91 pounds.   Father testified that the normal weight-height range should have been between 60-65 pounds.

{¶22} We have reviewed pictures of A.M.S. by himself, as well as, in the company of other boys of similar height, and it is readily apparent that A.M.S. is overweight.   Given A.M.S.'s health condition, a 30 pound deviation from the normal weight-height range poses a severe health risk.   In addition, said deviation indicates that A.M.S.'s weight was not being adequately monitored or properly addressed while in mother's care.

{¶23} We conclude that this was credible evidence of a change in circumstances to justify the trial court's decision awarding custody to father.   We also conclude that there was credible evidence that it was in the best interest of A.M.S. to have custody awarded to his father.   At the hearing, the father testified as follows about the steps he was taking to address A.M.S.'s weight:

> **So I took [A.M.S.] to the nutritionist and I'm guessing in November because I had concerns about his weight.   I took him there.   They give us a new diet plan.   I made [E.S.] aware of that diet plan and since then - - I had him for about ten days straight and I got his weight down about five pounds in ten days with him being with us.**

**{¶24}** Here, the record indicates that father is very proactive regarding son's health concerns and is making progress in managing A.M.S.'s weight. In addition, the GAL testified that although A.M.S. is well adjusted at both homes, he has expressed the desire to live with his father. On this evidence, we find no abuse of discretion in the trial court's decision to adopt the magistrate's recommendation that father should be awarded custody. Accordingly, we overrule both assigned errors.

**{¶25}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, ADMINISTRATIVE   JUDGE

LARRY A. JONES, SR., J., and
SEAN C. GALLAGHER, J., CONCUR