[Cite as *Guajardo v. Guajardo*, 2022-Ohio-209.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| JENNESSA A. GUAJARDO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2021-CA-22 |
| | : | |
| v. | : | Trial Court Case No. 2016-DR-237 |
| | : | |
| ANTHONY M. GUAJARDO | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of January, 2022.

. . . . . . . . . . .

TIM STEINHELFER, Atty. Reg. No. 0099877, 112 West Columbus Avenue, Bellefontaine, Ohio 43311
    Attorney for Plaintiff-Appellant

GREGORY K. LIND, Atty. Reg. No. 0055227, 20 South Limestone Street, Suite 340, Springfield, Ohio 45502
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Plaintiff-Appellant Jennessa Guajardo ("Mother") appeals from a judgment of the Miami County Court of Common Pleas, Domestic Relations Division, which overruled her objections to the magistrate's decision and awarded Defendant-Appellee Anthony M. Guajardo ("Father") residential custody of their two children, AG-1 and AG-2. For the reasons that follow, the trial court's judgment will be affirmed.

I.      Facts and Procedural History

{¶ 2} Mother and Father were married on February 19, 2011 in New Bern, North Carolina, and the pair had two children, AG-1, born in June 2013, and AG-2, born in June 2015. The trial court granted the parties a divorce on May 23, 2017 and ordered a shared parenting plan. According to the original plan, the children lived primarily with Mother; Father was the child support obligor. At that time, Mother lived in Piqua and Father resided in Dayton.

{¶ 3} On October 2, 2017, Father filed a motions to modify the shared parenting plan, for contempt, and for a recalculation of support obligations. Several weeks later, on November 17, 2017 Mother filed a motion to modify the plan. In her motion, Mother asked for permission to move out of Miami County to "obtain an IEP in a better school system." On January 9, 2018, after a motion from Father, the court entered a restraining order prohibiting Mother from moving the children out of the county or removing them from their current school district. The dispute was finally settled on October 11, 2018, with an agreed entry which resolved all post-decree motions. In it, Mother was named custodial parent and Father was given parenting time rights. Father would have the children on his consecutive days off each week. During the school year, the children were with Father

after school and he would take them to school the next morning. While AG-2 was not in school, Father was required to return him to daycare by 5:30pm. Father also had parenting time four weekends a year, and summer and holiday time. By this time, Father had moved from Dayton to Springfield.

{¶ 4} On June 10, 2019, Mother filed a notice that she intended to relocate outside of Miami County to Russell's Point, in Logan County. In August 2019, Mother moved with the children and enrolled AG-1 in the Indian Lake School District.

{¶ 5} The relocation prompted Father to file multiple motions on December 11, 2019, including motions for change of custody and contempt. He argued that Mother's move interfered with his parenting time rights and that she failed to permit parenting time; failed to allow him to pick up the children from the babysitter; and failed to provide him with contact information for the babysitter, doctor, and dentist. On August 27 and October 26, 2020, the parties went before the magistrate for a hearing which featured three main issues: (1) the children's education; (2) difficulties with parenting time; and (3) the children's health and developmental concerns. After hearing testimony from multiple witnesses including Mother, Father, and the guardian ad litem ("GAL"), the magistrate granted Father's motion for change of custody and awarded him parental rights and responsibilities for the children. The magistrate found that Mother's move and the circumstances that followed had had a profound impact on Father's parenting time, explaining that "[d]uring the school year, [the move] effectively cut in half the time the children were able to spend with their father." Magistrate's Decision at 7.

{¶ 6} Mother filed objections to the magistrate's decision on February 26 and April 12, 2021. The trial court overruled the objections and issued a judgment entry reallocating

parental rights to Father on July 9, 2021. Mother filed her notice of appeal on August 6, 2021, arguing that the trial court abused its discretion by finding a change in circumstances.

## II.     Change in circumstances

{¶ 7} In her lone assignment of error, Mother argues that the trial court abused its discretion when it overruled her objections to the magistrate's decision and found a change in circumstances.

{¶ 8} According to R.C. 3109.04(E), a trial court "shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree * * * that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." R.C. 3209.04(E)(1)(a).

{¶ 9} To determine the best interest of the child, the trial court must consider: (a) the wishes of the parents; (b) the wishes and concerns of the child as expressed to the court; (c) the child's interaction and interrelationship with the child's parents, siblings, and other people who significantly impact the child's best interest; (d) the child's adjustment to the child's home, school, and community; (e) the mental and physical health of all those involved; and (f) the parent more likely to honor and facilitate court-approved parenting time rights. R.C. 3109.04(F)(1).

{¶ 10} The court must retain the parent designated by the prior decree unless modification is in the best interest of the child and one of the following applies: (i) the residential parent agrees to a change in the residential parent; (ii) the child, with the

consent of the residential parent, has been integrated into the family of the person seeking to become the residential parent; or (iii) the harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child. R.C. 3109.04(E)(1)(a).

{¶ 11} While not defined by statute, the phrase "change of circumstances" has been held to pertain to "an event, occurrence, or situation which has a material and adverse effect upon the child." (Citations omitted.) *In re I.E.*, 2d Dist. Montgomery No. 28646, 2020-Ohio-3477, ¶ 15. "A change of circumstances must be one of substance, not slight or inconsequential, to justify modifying a prior custody order." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.26 1159 (1997); *Wiram v. Wiram*, 2d Dist. Clark No. 2017-CA-32, 2017-Ohio-7436, ¶ 5.

{¶ 12} "In determining whether a change of circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Davis* at paragraph two of the syllabus. Accordingly, we review that determination for an abuse of discretion. *In re I.E.* at ¶ 17. The trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 13} In this case, the trial court found that there was a change of circumstances as indicated by Mother's move from Miami to Logan County and in the health and development of the children, AG-1 and AG-2.

Mother's move

{¶ 14} The record reflects that in August 2019, Mother and the children moved

from Piqua in Miami County to Russell's Point in Logan County, and soon thereafter, AG-1 was enrolled in the Indian Lake School District. Father, around this time, moved as well, relocating from Dayton to Springfield.

{¶ 15} According to the testimony at trial and the factual findings of the magistrate, the children's new school was approximately 55 minutes away from Father's house, and class started an hour earlier than it did in Piqua. The distance and earlier start time made it nearly impossible for Father to get the children to school on the days they were with him. To mitigate the issue, Father requested parenting time with the children on the weekends. Mother rejected the request.

{¶ 16} Despite Father's house being a similar travel distance away from their old and new schools, the children's classes at Indian Lake School start at 8 a.m. instead of 9 a.m. Father stated that he would have to drive on rural roads and through multiple school zones which would make the drive even longer, necessitating a very early morning wake up for AG-1 and AG-2. The trial court found that compounding the problem even further was the fact that the commute to school would come immediately following Father's overnight shift as a trooper for the Ohio State Highway Patrol. Testimony indicated that he would finish his shift at 6 a.m. and then need to leave right after getting home to take the boys to school. Father testified that because of his lack of sleep, it would not have been safe to attempt. Accordingly, Father had to forego his time with the boys, and as a result, as the magistrate and trial court found, father's parenting time was "effectively reduced in half during the school year." Magistrate's Decision at 7; Entry at 21.

{¶ 17} Mother argues that relocation alone was not enough to constitute a change of circumstance, and while we have held that to be true in the past (*see Baker v. Baker*,

2d Dist. Montgomery No. 27850, 2018-Ohio-3065), the move, by itself, was not the only factor on which the trial court based its holding.

Health and Developmental Concerns

{¶ 18} In addition to the move to Logan County and its attendant parenting time issues, the trial court's holding that there was a change in circumstances was also based on the deteriorating health and developmental issues of the children.

{¶ 19} Evidence presented at trial showed that AG-1 had serious and worsening weight issues. Both parties agreed that AG-1 has been heavy for quite a while. In fact, AG-1 first saw a nutritionist in 2017 and then went back again in 2018. Despite purportedly having a nutrition plan (although the GAL testified that "clearly there was no nutrition plan being followed until my report came out [on July 21, 2020] and a nutritionist became involved again" (Trial Tr. at 103)), he continued to gain weight, and by the first hearing in August 2020, AG-1, age 7, weighed 105 pounds – a number that put him in the 99th percentile of children his age. Medical records presented by both Father and the GAL indicated that there had been a significant increase in weight since the move to Logan County and the decreased parenting time with Father that came from it. Evidence revealed that AG-1 had gained 20 pounds between August 2019 and May 2020. Medical records also indicated that AG-1's weight had caused secondary medical concerns including diagnoses of bullous impetigo and increased body mass index. Further, the GAL cited to a growth chart from the child's doctor showing that, on the current trajectory, AG-1 would weigh more than 200 pounds by age 12. *See In re: A.M.S.*, 8th Dist. Cuyahoga No. 98384, 2012-Ohio-5078 (finding mother's failure to monitor child's weight gain resulting in severe health risk amounted to a change in circumstances justifying awarding

custody to father).

{¶ 20} The magistrate and trial court found that AG-1's weight had increased substantially, and his health had decreased since the agreed entry. But it was not just the older child about which the court was concerned; it believed that AG-2 had speech and learning issues that had been unaddressed by Mother in the post-Agreed Entry time period.

{¶ 21} As to AG-2's speech issues, the GAL testified that during her time with the child she could only occasionally understand what he was saying and had to ask a parent for interpretation. Evidence indicated that at some point AG-2 was evaluated by speech experts, but due to Mother's income at the time of her move, he did not qualify for Head Start preschool, so whatever services or therapy AG-2 needed would have to be paid out-of-pocket. The magistrate, however, found that "[Father] credibly testified that he offered to pay for the speech therapy out of pocket since it was not covered by health insurance." Magistrate's Decision at 4-5. Despite the offer, Mother took no action and testified that other than work through the educational service center for speech, "there was nothing else I could do." Trial Tr. at 30. The trial court disagreed.

{¶ 22} The court also seemed to be troubled by Mother's laissez faire attitude toward academic deficiencies. Mother was content to let the school system address her son's needs and deficiencies, while Father's new wife, an educator, was actively working with him at home on basic fine motor skills and foundational reading, writing, and counting skills.

{¶ 23} Ultimately, the trial court held that the "record shows that [Mother's] relocation, with the attendant circumstances of inhibiting [Father's] parenting time * * * as

well as the children's ongoing medical and school-performance problems, are sufficient to qualify as changed circumstances." Entry at 21.

{¶ 24} Based on our review of the record and caselaw, we cannot say that the trial court abused its discretion when it held that the children's worsening health and school issues, as well as Father's material decrease in parenting time, amounted to a substantial change of circumstances which necessitated a change of the custodial parent. *See Davis,* 77 Ohio St.3d 415, 418, 674 N.E.26 1159*.* Mother's assignment of error is overruled.

## III.     Conclusion

{¶ 25} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


TUCKER, P. J. and DONOVAN, J., concur.


Copies sent to:

Tim Steinhelfer
Gregory K. Lind
Hon. Stacy M. Wall